

NUMBER 13-07-240-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JAMES KENNETH COLLINS,                                          Appellant,

v.

STACEY LEIGH COLLINS,                                          Appellee.

On appeal from the 221st District Court
of Montgomery County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Benavides, and Vela**
**Memorandum Opinion by Justice Yañez**

This appeal arises from a motion to enforce and clarify a divorce decree filed by

appellee, Stacey Leigh Collins. Appellant, James Kenneth Collins, contends the trial court

erroneously interpreted a provision in the divorce decree. We reverse the complained-of

portion of the trial court's clarification order and remand the cause for further proceedings

consistent with this opinion.

**FACTUAL & PROCEDURAL BACKGROUND**

The trial court pronounced the divorce of James Kenneth Collins and Stacey Leigh Collins on June 30, 2005. On November 22, 2005, the trial court signed their divorce decree, which contained a property settlement agreement ("the agreement"). On January 19, 2007, Stacey filed a "First Amended Motion to Implement and Motion to Clarify," alleging that James had failed to comply with parts of the agreement and praying for relief therefrom. James then filed a counter-claim for enforcement of the agreement. James complained, in part, that Stacey had failed to comply with a right-of-first-refusal provision ("the refusal provision") that was applicable to the sale of "The Big Red Barn" ("the Barn"). The Barn is a commercial building jointly owned by James and Stacey under the terms of the agreement. The refusal provision stated the following:

> . . . IT IS AGREED, ORDERED, and DECREED that if either party wants to sell, that party can demand the sale of the property known as "The Big Red Barn" and it has to be sold. There is a right of first refusal for the other party to buy out their percentage. If the parties cannot agree upon the sales price, then a commercial appraisal must be done and the amount arrived at on the appraisal is the sales price.
>
> IT IS AGREED, ORDERED and DECREED that at the sale of "The Big Red Barn" the net proceeds will be split 55% to STACEY LEIGH COLLINS and 45% to JAMES KENNETH COLLINS.[1]

---

[1] *See generally City of Brownsville v. Golden Spread Elec. Coop., Inc.*, 192 S.W.3d 876, 880 (Tex. App.–Dallas 2006, pet. denied) (discussing law applicable to a right of first refusal).

> Generally, a right of first refusal or preemptive right to purchase requires the owner of the subject property to offer the property first to the holder of the right on the same terms and conditions offered by a third party. When the property owner gives notice of his intent to sell, the right of first refusal matures or "ripens" into to an enforceable option. The terms of the option are formed by the provisions granting the preferential right to purchase and the terms and conditions of the third-party offer presented to the rightholder. Once the property owner has given the rightholder notice of his intent to sell on the terms contained in the third-party offer, the terms of the option cannot be changed for as long as the option is

2

James's counter-claim alleged the following facts: (1) Stacey entered into a contract to sell the Barn to Greg Gordon for $385,000; (2) Stacey failed to notify James of her intent to sell the Barn prior to entering into the contract for sale; (3) upon notifying James of her intent to sell the Barn, Stacey gave James five days to exercise his right of first refusal to purchase the Barn for $385,000 (Gordon's purchase price); (4) on February 12, 2007, James exercised his first refusal right by giving Stacey's attorney written notice of his intent to purchase the Barn for $282,500, rather than for $385,000; and (5) Stacey refused to sell the Barn to James for $282,500. James arrived at the $282,500 purchase price from a commercial appraisal made on the Barn in May 2006. The appraisal was the result of Stacey applying for a bank loan, and the bank subsequently ordering a commercial appraisal to be conducted on the Barn for underwriting purposes.

James's counterclaim requested the trial court to find Stacey in contempt for her failure to sell the Barn to James for $282,500, "subject to the proportionate payment by the parties of their prorata share of the taxes, insurance, interest and the lien balance(s) associated with the Big Red Barn." James's legal position was that his right of first refusal matured into an option contract to purchase the Barn when Stacey arranged for the sale of the Barn. Because there was disagreement over the $385,000 purchase price proffered by Stacey, James had the right under the agreement to purchase the Barn for a commercially appraised amount, which, James asserts, means the commercial appraisal

---

binding on the property owner.

. . . When the rightholder gives notice of his intent to accept the offer and exercise his option, a contract between the rightholder and the property owner is created.

*Id.*

3

conducted on the Barn prior to Stacey's sale arrangement. The counter-claim further requested the trial court to compel Stacey to sell her interest in the Barn to James at the appraised amount of $282,500.

The trial court entertained Stacey's and James's motions at a hearing held on February 22, 2006. Testimony was received from Stacey, John, Gordon, and other witnesses. At the hearing's conclusion, the trial court determined, among other things, that James's interpretation of the agreement's refusal provision was inaccurate. The trial judge vocalized her interpretation of the provision, stating:

> [T[he point of the agreement and the right of first refusal was to get a fair market value for the property and to get an appraisal. There was an assumption there that it would be an appraisal of the fair market value as of the time that the right of first refusal was to be exercised. It is my understanding that there is nothing that values the property any better than what somebody will pay for the property. So, it's clear the property is worth $385,000.

The trial court then relayed its interpretation through a written order, which stated:

### EXERCISE 1ST RIGHT OF REFUSAL BY JAMES KENNETH COLLINS

> The Court finds that the intent of the parties concerning the commercial appraisal of the relevant real property herein was for the purpose of obtaining the highest Fair Market Value amount of money that the real property would sell for. The Court finds that a contract for sale exists at this time between a Greg Gordon and Stacey Leigh Collins at a sales price of $385,000.00. However, James Kenneth Collins has a first right of refusal to purchase the real property within a reasonable time for the same price should he choose to do so.
>
> IT IS THEREFORE the Order of this Court that James Kenneth Collins has 21 days to exercise his first right of refusal or loose [sic] his first right of refusal to purchase this real property on or before March 15, 2007 at 5:00 p.m. Should James Kenneth Collins elect to purchase this real property, the sale must be consummated, funded, and closed within 30 days which is on or before April 16, 2007 at 5:00 p.m. All monies or things of value generated from this sale is ORDERED to be held in escrow pending

4

it division by this Court.[2]

On appeal, James argues that "the trial court erred when it ruled contrary to the parties' unambiguous written contract as to the sales price of their jointly owned commercial property." James thus "prays that this Court reverse the trial court's decision as to the Big Red Barn's sales price, hold the sales price to be $282,500.00, [and] remand back to the trial court."

## APPLICABLE LAW

We review the trial court's ruling on a motion for clarification of a divorce decree under an abuse of discretion standard.[3] The trial court abuses its discretion when it (1) acts unreasonably, arbitrarily, or without reference to any guiding rules or principles, or (2) erroneously exercises its power by making a choice outside the range of choices permitted the court by law.[4]

Under section 9.006 of the Texas Family Code, "the court may render further orders to enforce the division of property made in the decree of divorce . . . to assist in the implementation of or to clarify the prior order."[5] The court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed.[6] A trial court lacks the authority to change the property

---

[2] *See generally* TEX. FAM. CODE ANN. § 9.008 (Vernon 2006) (authorizing the trial court to "render a clarifying order setting forth specific terms to enforce compliance with the original division of property").

[3] *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.–Texarkana 2003, pet. denied).

[4] *Id.*

[5] TEX. FAM. CODE ANN. § 9.006(a) (Vernon 2006).

[6] *Id.* § 9.006(b).

division in a final divorce decree.[7] An order that alters the substantive division of property in a final divorce decree is "beyond the power of the divorce court and is unenforceable."[8]

We interpret divorce decrees to determine not what the trial court should have done but, if possible, what the court actually did.[9] Agreed judgments are interpreted in accordance with contract law.[10] We construe divorce decrees, like judgments, as a whole to harmonize and give effect to the entire decree.[11] If, when read as a whole, the divorce decree's terms are unambiguous, we must effectuate the order in light of the actual language used.[12] On the other hand, if the divorce decree's terms are ambiguous, that is, subject to more than one reasonable interpretation, we must review the record along with the decree to aid in interpreting the judgment.[13] Whether a divorce decree is ambiguous is a question of law subject to de novo review.[14] Where provisions in the decree appear to conflict, they should be harmonized if possible to reflect the intentions of the parties.[15] Furthermore, no single provision taken alone will be given controlling effect; rather, all

---

[7] *McGehee v. Epley*, 661 S.W.2d 924, 926 (Tex. 1983).

[8] TEX. FAM. CODE ANN. § 9.007(b) (Vernon 2006).

[9] *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

[10] *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 130 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

[11] *Shanks*, 110 S.W.3d at 447.

[12] *Id.*

[13] *Id.*

[14] *Id.*; *Wright v. Eckhardt*, 32 S.W.3d 891, 894 (Tex. App.–Corpus Christi 2000, no pet.).

[15] *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983) (op. on reh'g).

provisions must be considered with reference to the whole instrument.[16]

## DISCUSSION

"Generally, a right of first refusal . . . requires the owner of the subject property to offer the property first to the holder of the right on the same terms and conditions offered by a third party."[17]  There are other requirements, however, that a right of first refusal can impose on the owner of the subject property—such as requiring that owner to first offer the property to the holder of the right at a market value set by an independent appraisal.[18]  We find that this latter requirement was imposed upon Stacey when James exercised his right of first refusal.

As previously stated, the agreement's refusal provision provides:  "There is a right of first refusal for the other party to buy out their percentage.  If the parties cannot agree upon the sales price, then a commercial appraisal must be done and the amount arrived at on the appraisal is the sales price."  This language is not ambiguous.  It clearly permits the holder of the right of first refusal to purchase the Barn at a purchase price set by a commercial appraisal.  The language neither explicitly nor implicitly requires the holder of

---

[16] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

[17] *City of Brownsville*, 192 S.W.3d at 880.

[18] *See*, *e.g.*, 12 U.S.C. § 2219a (1988) (This statute requires an institution of the Farm Credit System that acquires agricultural real estate as a result of a loan foreclosure to provide the previous owner a right of first refusal.  This is effected by requiring the institution to notify the previous owner of that owner's right to purchase the property at its fair market value as established by an accredited appraiser or to offer to purchase it at a lesser price.); *Holland v. Hannan*, 456 A.2d 807, 811 n.3 (D.C. 1983) (addressing a contract containing right of first refusal, which gave the right's possessor the option of purchasing the subject property "for cash at the appraised fair market value returned by the appraiser or appraisers"); *Turner v. Shirk*, 364 N.E.2d 622, 623 (Ill. App. Ct. 1977) (addressing a contract containing right of first refusal, which stated that the right's possessor "shall be given opportunity to meet any bona fide offer from a third person or the opportunity to purchase at the fair cash market value based on appraisal as determined by three appraisers whereby one appraiser would be selected by First Party, one by Second Party and the two selected would select a third appraiser").

7

the right to purchase the Barn on the same terms offered by or to a bona fide purchaser.

The trial court's clarification order reveals that the court wrongly focused on deciphering James's and Stacey's intentions for constructing the refusal provision; the trial court, however, should have *first* focused on whether the provision's language was ambiguous or unambiguous. Had the trial court determined that the language was ambiguous, the court could have then proceeded to assess the parties' intentions. The fact that James provided parol evidence of the parties' intent did not absolve the trial court of its responsibility to effectuate the refusal provision in light of the actual language used. Moreover, James's testimony cannot create a latent ambiguity, as Stacey argues. His testimony does not create a latent ambiguity because it does not arise out of the application of the agreement.[19]

The Collins's divorce decree was agreed to by both parties and appealed by neither; therefore, we must construe the decree and the property settlement agreement incorporated therein as written.[20] When construing the language at issue as written, we find that the trial court's clarification order impermissibly altered the substantive division of property in the decree. We do not find, however, that James is entitled to rely on a commercial appraisal of the Barn that was conducted prior to the maturation of his right of first refusal. The refusal provision clearly stipulates that the holder of the right can buy the

---

[19] *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282-83 (Tex. 1996) (per curiam). As the supreme court has explained, a latent ambiguity arises in the following type of situation: "If a contract called for goods to be delivered to 'the green house on Pecan Street,' and there were in fact two green houses on the street, it would be latently ambiguous." *Id.* at 283 (quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 n.4 (Tex. 1995) (per curiam)).

We reject all of Stacey's remaining arguments, which would only be relevant if we had found the refusal provision ambiguous.

[20] *See Shanks*, 110 S.W.3d at 448.

8

Barn at a commercially appraised value that is formulated *after* a party demands the sale of the Barn and a disagreement arises as to the Barn's sales price. If James thus wishes to exercise his right of first refusal, the Barn must be commercially appraised again, and the sales price of the Barn will be governed by the new appraisal.

### CONCLUSION

We sustain James's sole issue on appeal. Accordingly, we reverse the portion of the trial court's order set out above in this opinion, and deny Stacey's request to assess damages against James for filing a frivolous appeal. We remand the cause to the trial court for further proceedings consistent with this opinion.[21]

 

 

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed this
the 12th day of March, 2009.

---

[21] On remand, the trial court may specify the manner by which the Barn's commercially appraised value is acquired. *See* TEX. FAM. CODE ANN. § 9.006. The trial court, for example, could (1) instruct the parties on how the appraiser will be selected, (2) set the Barn's sales price at the average appraised value of two or more appraisals, or (3) set the Barn's sales price at the second highest commercially appraised value among three obtained appraisals.